BARTON T. BEAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61293, 61294. Promulgated February 27, 1934.

*A. W. Helvern, Esq.,* for the petitioner.
*Dean P. Kimball, Esq.,* for the respondent.

### OPINION.

VAN FOSSAN: These proceedings were brought to redetermine deficiencies in the income taxes of the petitioner for the years 1928 and 1929 in the sums of $918.63 and $1,051.91, respectively.

The petitioner alleges that the respondent erred in including in his taxable income the moiety or community share, properly taxable to his wife, of certain payments received by him from Lybrand, Ross Bros. & Montgomery, in addition to his regular salary.

The facts, presented by stipulation and exhibits, are substantially as follows:

The petitioner is a married man and was so married and resident in California during the years 1928 and 1929. Separate income tax returns were filed by the petitioner and his wife, Mabelle M. Bean, for the years 1928 and 1929, in which separate returns there was equally divided between them on the community income theory the following item, which was designated by them on the returns filed as follows:

| | Total | Reported by— | |
| | | Husband | Wife |
|---|---|---|---|
| Calendar year 1928: | | | |
| Item 4—income from partnerships: Lybrand, Ross Bros. & Montgomery (exclusive of salary, Item 1) | $15,905.53 | $7,952.76 | $7,952.77 |
| Calendar year 1929: | | | |
| Item 4—income from partnerships: Lybrand, Ross Bros. & Montgomery (exclusive of salary, Item 1) | 26,565.10 | 13,282.55 | 13,282.55 |

In addition to this item, there was divided between them the following item:

| | Total | Reported by— | |
| | | Husband | Wife |
|---|---|---|---|
| Calendar year 1928: | | | |
| Item 1—Salary, Lybrand, Ross Bros. & Montgomery ($12,000), net of business expenses | $11,410.12 | $5,705.06 | $5,705.06 |
| Calendar year 1929: | | | |
| Item 1—Salaries, wages and commissions, net of business expenses | 14,971.48 | 7,485.74 | 7,485.74 |

The deficiencies in issue in these proceedings arise in part by reason of the fact that the Commissioner of Internal Revenue in the deficiency letters increased the income reported by the petitioner in his returns for the years 1928 and 1929 by the respective amounts ot $7,952.77 and $13,282.55. The increases of the petitioner's income used in part as the basis for the deficiencies result from the transfer by the respondent of the income reported by the petitioner's wife under item 4 of her returns to the petitioner's return.

As of December 31, 1923, and prior thereto, the petitioner was a stockholder of Klink, Bean & Co., a corporation. On January 1, 1924, an agreement was made between the three principal stockholders of Klink, Bean & Co. and Lybrand, Ross Bros. & Montgomery, a partnership engaged in the business of auditing and accounting. That agreement has and is being carried out by the parties thereto. The pertinent provisions of the agreement are as follows:

That the accounting business heretofore carried on by first parties either through the medium of said corporation known as Klink, Bean & Company or as individuals, shall be merged with the accounting business of the second parties upon the following terms and conditions:

(1) From the date hereof all accounting business of either first or second parties in the State of California shall be carried on in the name of Klink, Bean & Company and Lybrand, Ross Bros. & Montgomery or in the name of Lybrand, Ross Bros. & Montgomery and Klink, Bean & Company, as occasion may require, such business being hereinafter referred to as the California business, and shall belong to the second parties subject to first parties' participation as hereinafter set forth.

(2) The first parties shall continue to be interested, but only as special partners entitled to profits or a share thereof and without liability for losses, in said California business for a period of five years and nine months from the date hereof. At the end of that time, to wit, on September 30, 1929, the interest of first parties in said business shall cease and determine in every respect, subject only to an accounting in respect of business theretofore transacted or in progress. During said period of five years and nine months the profits to which first parties shall be entitled from said business shall be as follows:

(a) During the first two years of said period the first parties shall be entitled to profits of said California business to an aggregate of one hundred eight thousand (108,000) dollars and the second parties guarantee that such profits will be earned and will be paid to the parties of the first part in the following amounts, upon the following dates: Fifty thousand (50,000) dollars on July 31, 1924, twenty-five thousand (25,000) dollars on January 31, 1925, and thirty-three thousand (33,000) dollars on July 31, 1925. The profits in excess of one hundred eight thousand (108,000) dollars, if any, for the said period of two years shall be payable to the second parties.

(b) For the remainder of said period of five years and nine months the first parties shall be entitled to fifty (50) percent of the profits of said business earned during the whole of the remainder of said period, the said last three years and nine months being considered as a single accounting period, no year standing by itself, but rights to profits being determined by the result of the entire period of three years and nine months. * * *

The profits to which the parties of the first part shall be entitled during said period of five years and nine months shall be distributed to them quarterly as earned, in the following proportions: To George T. Klink three eighths (3/8), to B. T. Bean three eighths (3/8), to Clarence S. Black two eighths (2/8). Any overpayment to the parties of the first part resulting from subsequently incurred losses during the latter three years and nine months of said period shall be adjusted either from profits subsequently earned or at the end of said period. The right of the first parties to said profits shall be an absolute right running to each of them, his heirs, or personal representatives in case of his death, and dependent only on a compliance by said party with paragraphs numbered (8) and (9) hereof.

*       *       *       *       *       *       *

(3) The said California business shall be in charge of a resident partner of the second parties, who shall have the general management and control of the same. The first parties agree to give, during said period of five years and nine months, their time and attention to said California business and to its maintenance and extension to the following extent and upon the following

terms: Said Bean shall devote his entire time to said business at a salary of twelve thousand (12,000) dollars a year provided, however, that he may devote a reasonable amount of time to consolidations, mergers and financing, any compensation received therefor by him to be retained by him individually. * * * The resident partner of the second parties shall have the right to discontinue at any time the services and compensation of any of the parties of the first part as just hereinbefore set out, and shall also have authority, by agreement with any one of the first parties, to change the terms upon which such one of the first parties shall devote his time and attention to said business.

(4) The profits of the California business in which the parties of the first part are to share as above shall be the actual gross fees thereof less the following expenses incident to the same:

·(a) The salary or salaries of the resident partner or partners of the second parties and the salaries of the first parties;

\* \* \* \* \* \* \*

(5) The second parties shall take over and there shall be transferred to them by the first parties all furniture and office equipment of the accounting offices of the first parties at the fair value of the same, such value to be determined by agreement, or, if an agreement cannot be had, by an appraisement of a disinterested and competent appraiser. Such value shall be paid to the first parties as soon as the same can be determined. The first parties shall also turn over to the second parties all files, books, records, working papers, and other data necessary for the continuation of said business of the first parties.

(6) The second parties shall acquire no interest in said corporation known as Klink, Bean & Company and the first parties shall have the right to continue the existence of the same, but said corporation shall not engage in the accounting business * * *.

(7) The necessary working capital of said California business from and after January 1, 1924, shall be furnished by the second parties.

(8) The first parties jointly and severally covenant and agree to do and perform all acts necessary, fully and completely, both in law and in equity, to transfer and secure to second parties the accounting business heretofore carried on by first parties and as far as possible to secure the continuance of all existing clients, to the end that said accounting business shall pass to second parties subject only to the interest of first parties in the profits thereof as herein provided and to the performance by second parties of their obligations hereunder.

(9) The first parties covenant and agree, each for himself, that he will not, during said period of five years and nine months, or within five years thereafter, engage directly or indirectly in the accounting business or in business competitive therewith.

On August 17, 1925, the signatories of the agreement executed a certificate of copartnership which was duly acknowledged.

During the year 1928 the petitioner received from Lybrand, Ross Bros. & Montgomery $12,000 as salary, pursuant to the provisions of clause 3 of the agreement of January 1, 1924. He also received in that year from Lybrand, Ross Bros. & Montgomery $15,905.53, pursuant to the remaining provisions of said agreement. That amount was reported under item 4 in the income tax returns of the taxpayer and his wife for the year 1928, one half by each.

During the year 1929 the petitioner received from Lybrand, Ross Bros. & Montgomery $10,875 as salary, pursuant to the provisions of clause 3 of said agreement. In addition he received in that year from Lybrand, Ross Bros. & Montgomery $26,565.10, pursuant to the remaining provisions of the agreement. That amount was reported under item 4 in the income tax returns of the petitioner and his wife for the year 1929, one half by each.

The petitioner contends that payments made to him in 1928 and 1929, pursuant to clause (2) (d) of the contract of January 1, 1924, represent compensation for services rendered and that as such they are community income and should be so taxed to the petitioner and his wife, while the respondent asserts that such payments constitute installments on the sale price of the petitioner's interest in Klink, Bean & Co., that the property from which the income was derived was acquired prior to July 29, 1927, and that, therefore, such income is not subject to division between the husband and wife.

The parties have agreed that the contract of January 1, 1924, has been duly carried out to date. Therefore, our decision must rest upon a proper construction of that contract. We are struck instantly by its peculiar yet comprehensive character. It provides for a merger, the sale of assets, tangible and intangible, the formation of a limited partnership, a unique management control of the business and the payment of specified salaries, and it also contains an inconsistent covenant to refrain from engaging in the accounting business. Its effect is to dispose of the accounting business of Klink, Bean & Co., a corporation, to deprive that corporation of its function as an accounting enterprise, and to substitute therefor a partnership as a vehicle for carrying on the activities of both the corporation and the individual stockholders. The corporate entity of Klink, Bean & Co. is ignored in the execution of the agreement.

Taken as a whole, the contract is primarily one of purchase and sale. It is obvious that the underlying purpose was to eliminate a prominent and active competitor from the accounting field. This purpose is clearly suggested in clause (8) of the contract, which provides that:

The first parties jointly and severally covenant and agree * * * to transfer and secure to second parties the accounting business heretofore carried on by first parties and as far as possible to secure the continuance of all existing clients, to the end that said accounting business shall pass to second parties subject only to the interest of first parties in the profits thereof as herein provided and to the performance by second parties of their obligations hereunder.

The term of the contract is unusual—five years and nine months. No explanation for the specific term is given, but it is a reasonable presumption that it bears some ascertained relationship to the char-

acter, condition, and amount of the corporation's business, including its contracts with others.

The corporation and its principal stockholders undertook to transfer to Lybrand, Ross Bros. & Montgomery all of the existing business and assets of the corporation. The monetary consideration was a definite sum of $108,000 payable within two years and an undetermined amount, measured by the partnership's earnings, to be paid during the remaining three years and nine months. The entire purchase price was to be paid out of current profits, but the $108,000 payment was guaranteed by the partnership. The name of the corporation was to continue for a time, undoubtedly on account of its existing contracts, but it was calculated that it would gradually disappear and eventually the firm of Lybrand, Ross Bros. & Montgomery, under its own name, would acquire the business and good will formerly possessed by the corporation.

As a further consideration, the partnership agreed to admit Klink, Bean, and Black as special partners only, with no liability for losses. They were to be paid certain salaries for their actual services, but the resident managing partner had the absolute power under paragraph 3 to dispense with such services at any time he saw fit. In this connection it is important to note that the total amounts payable under paragraph 2 (b) were in no wise dependent on the continued employment of petitioner and his associates by the partnership during the period of five years and nine months named in the contract. The percentage of profits was payable irrespective of such employment or dismissal.

The salaries named may properly be considered to represent the reasonable value of personal current services agreed on by the parties to the contract. The continuing division of profits was part of the consideration for the acquisition of the name, good will, and accounting business of Klink, Bean & Co.

Furthermore, the contract specifically provides that:

\* \* \* The right of the first parties to said profits shall be an absolute right running to each of them, his heirs, or personal representatives in case of his death, and dependent only on a compliance by said party with paragraphs numbered (8) and (9) hereof.

These provisions indicate that the payment of profits bore no relation to personal services to be rendered by the petitioner and his former associates.

Thus, the provisions governing the personal activities of the petitioner which resulted in his salary payments and, hence, his earned income, are readily distinguishable from those controlling the transfer of the business. In the latter category is paragraph (2) (b). The fact that a portion of the purchase price of the corporation's

accounting business was measured by the earnings of the partnership can not transform it into earned income.

The legislation in California, passed on July 29, 1927, relating to community property, has no application to profits derived from property acquired prior to that date. *Helen N. Winchester, Administratrix*, 27 B.T.A. 798; *Hirsch* v. *United States*, 62 Fed. (2d) 128; certiorari denied, 288 U.S. 735. We see no merit in the petitioner's position and sustain the action of the respondent.

*Decision will be entered for the respondent.*