[Civ. No. 519. Fourth Appellate District.—November 9, 1931.]

MARTHA E. MELVIN, Appellant, v. IDA M. CARL, Executrix, etc., Respondent.

Robert F. Shippee and C. C. Caswell for Appellant.

Lucian J. Clarke for Respondent.

MARKS, J.—M. E. Melvin, now deceased, and Martha E. Melvin, appellant, had been husband and wife and had lived together as such in the city of Marshalltown, Iowa, for more

than thirty years prior to July 12, 1922. During their married life considerable property was accumulated, which, under the laws of Iowa was the separate property of the husband. In November, 1919, they came to Los Angeles for the benefit of the health of M. E. Melvin, returning to their home in Iowa in 1921.

While in California M. E. Melvin purchased two lots in the city of Los Angeles with money which he had acquired in Iowa. On April 25, 1922, he deeded the two lots to Fred W. Carl, since deceased, for the sum of $5,000, $3,000 being paid in cash and a note and mortgage given to secure the balance. The deed of conveyance was not signed by Martha E. Melvin.

In August, 1921, M. E. Melvin filed an action for divorce against Martha E. Melvin in the District Court of Marshall County, Iowa, which was tried on July 2, 1922, and resulted in a final decree of divorce being granted to Mr. Melvin. In this decree the court reserved the right to dispose of the property of either of the parties and make provision for the support of Martha E. Melvin. A receiver was appointed to take over the property of M. E. Melvin and divide it between the parties.

On August 23, 1922, the receiver filed his petition in the District Court of Marshall County praying for an order authorizing him to deliver the deed from M. E. Melvin to Fred W. Carl, which deed was evidently then in his possession. After a hearing upon this petition the court approved the sale of the real property in Los Angeles from Melvin to Carl and authorized the delivery of the deed and also authorized the receiver to execute a receiver's deed in case he deemed such an instrument necessary. Fred W. Carl thereupon received the deed from Melvin and recorded it in Los Angeles County on September 20, 1922. The note and mortgage for the $2,000 were subsequently paid.

Fred W. Carl died in October, 1922, and M. E. Melvin died in November, 1923, after the commencement of this action. No steps were taken to substitute Melvin's personal representative herein.

Appellant filed this action in the Superior Court of Los Angeles County on February 17, 1923, seeking to set aside and vacate the deed and mortgage hereinbefore referred to, alleging that the property conveyed was the community

property of herself and her former husband and that she had neither joined in, nor signed the deed from Melvin to Carl.

█ Appellant complains of the rulings of the trial court in admitting in evidence exemplified copies of the records of the District Court of Marshall County, Iowa, in the divorce proceedings and receivership hereinbefore referred to. Objections to the introduction of this evidence should have been sustained. █ It has been held by our Supreme Court that a judgment or decree of a court of a sister state cannot affect title to property situated within the state of California. (*Title Ins. & T. Co.* v. *California Dev. Co.*, 171 Cal. 173 [152 Pac. 542]; *Taylor* v. *Taylor*, 192 Cal. 71 [51 A. L. R. 1074, 218 Pac. 756].) █ It has also been held that a receiver appointed by a court of a sister state has no authority over property in California. (*Universal Oil Land Co.* v. *Gates*, 117 Cal. App. 363 [3 Pac. (2d) 1034].) However, the rulings of the trial court admitting these documents in evidence were not prejudicial to the rights of appellant.

█ The trial court found upon ample evidence, and correctly so, that the property acquired in Iowa, with part of which the property in Los Angeles was purchased by M. E. Melvin, was his sole and separate property, and that the lots purchased were likewise his sole and separate property and not the community property of himself and Martha E. Melvin. Under the provisions of sections 157, 164, 172 and 172a of the Civil Code Mrs. Melvin did not need to join in a deed conveying her husband's separate property. Section 164 of the Civil Code, as amended in 1917 (Stats. 1917 p. 827), read in part as follows: "All other property acquired after marriage by either husband or wife, or both, including real property situated in this state, *and personal property wherever situated, acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state, is community property;*" (italics ours).

In commenting upon this amendment the Supreme Court in *Estate of Frees*, 187 Cal. 150 [201 Pac. 112, 113], held as follows: "Two rules have uniformly been adhered to in the interpretation of section 164 of the Civil Code and its amendments. First, that the law has been construed as

applying only to property acquired in California, or by persons domiciled here. Second, that amendments are not to be construed as retroactive, unless the language thereof compels such a construction. Thus, notwithstanding that the definition of community property has in terms included all property acquired by the husband or wife after marriage, other than that acquired by gift, bequest, devise, or descent it has uniformly been held that property acquired in other states by persons domiciled therein and subsequently brought to California by them at the time of establishing residence in this state, retained the status that it had in the state where it was acquired, regardless of our definition of community property. As in most of the states, property acquired after marriage was the separate property of the husband; it remained such when brought to this state by the husband. (*Kraemer* v. *Kraemer*, 52 Cal. 302; *Estate of Burrows*, 136 Cal. 113 [68 Pac. 488]; *Estate of Niccolls*, 164 Cal. 368 [129 Pac. 278]; *Estate of Warner*, 167 Cal. 686, 691 [140 Pac. 583]; *Estate of Boselly*, 178 Cal. 715 [175 Pac. 4].)''

This rule finds support in *Estate of Arms*, 186 Cal. 554 [1^9 Pac. 1058], and *Estate of Drishaus*, 199 Cal. 369 [249 Pac. 515, 516]. In the latter case it was said: ''The effect of these earlier and later decisions of this court cannot be held to be other than that of deciding that the vested interest which the decedent in the instant case had in the personal property brought by him to this state as his separate property, and since then up to the time of his death held and owned by him as his separate property and estate, was unaffected by the foregoing amendments to the Civil Code, and that at the time of the death of said decedent the whole of said property was his separate property and estate.''

In the case of *McKay* v. *Lauriston*, 204 Cal. 557 [269 Pac. 519], a question quite similar to the one we are considering was before the Supreme Court. In this case the 1923 amendment to section 1401 of the Civil Code was under consideration in respect to its effect on the wife's right to make a testamentary disposition of an interest in community property acquired in 1918. The court said:

''Could a subsequent statute or an amendment to the statute in force at the time the property was acquired invest the wife with a right which she did not possess prior to the enactment of said statute or amendment? This question

has frequently been before the courts of this state and particularly in proceedings where the nature and extent of the interest of the wife in the community property of herself and husband have been the subject of controversy. It has been consistently and repeatedly held by this court, beginning with the case of *Spreckels* v. *Spreckels,* reported in 116 Cal. 339 [58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228], down to cases of recent determination that amendments whereby it was sought to lessen, enlarge or change in any manner the rights of the respective spouses in community property will not be given retroactive effect so as to affect the respective rights of the parties in community property acquired prior to the enactment of such amendments (*Spreckels* v. *Spreckels, supra; Estate of Frees,* 187 Cal. 150 [201 Pac. 112]; *Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 Pac. 22]; *Shubert* v. *Lowe,* 193 Cal. 291 [223 Pac. 550]; *Estate of Drishaus,* 199 Cal. 369 [249 Pac. 515]; *Stewart* v. *Stewart,* 199 Cal. 318 [249 Pac. 197]). The decisions of the District Court of Appeal upon this question have been to the same effect (*Clavo* v. *Clavo,* 10 Cal. App. 447 [102 Pac. 556]; *Jacobs* v. *All Persons,* 12 Cal. App. 163 [106 Pac. 896]; *Scott* v. *Austin,* 57 Cal. App. 553 [207 Pac. 710]; *Scott* v. *Austin,* 58 Cal. App. 643 [209 Pac. 251]; *Copp* v. *Rives,* 62 Cal. App. 776 [217 Pac. 813]). At the time of the purchase of said real property the respondent took the absolute title thereto subject to whatever rights his wife had therein by virtue of the fact that the same was the community property of himself and his wife. This right of his wife was the right to receive upon the death of her husband, and subject to his debts, one-half of the community property. In other words, the wife was given a right in the community property contingent upon her surviving her husband, and upon the happening of this contingency such right would have ripened into a vested interest in her in and to the said community property. Her death, however, prior to that of her husband, made the happening of this contingency impossible and thereupon the entire estate belonged to the husband without administration (Civ. Code, sec. 1401, prior to its amendment in 1923). These rights of the respective spouses in the community property attached to the property and were acquired by the parties at the time of the con-

veyance of the property, and, as we have seen, said rights cannot be impaired or destroyed by subsequent legislation.''

In *Williams* v. *Sutphen*, 92 Cal. App. 697 [268 Pac. 946], it was held that property which was the separate property of a wife in the state of Oregon and which was brought by her and her husband to California in 1921, more than three years after the amendment to section 164 of the Civil Code in 1917, remained the separate property of the wife in California. A similar conclusion was reached in *Estate of Bruggemeyer*, 115 Cal. App. 525 [2 Pac. (2d) 534].

Under the authorities cited we have concluded that the separate property of M. E. Melvin, brought by him to California from the state of Iowa and used in the purchase of the two lots in the city of Los Angeles, remained his separate property, and that the investment of these funds in real estate in California in the year 1920 did not change the separate character of the property. The provisions of section 164 of the Civil Code, as amended in 1917, could not deprive him of his separate property.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 7, 1932.